The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable Craig H. D. Armon presiding. Morning, counsel. We'll call case number 4-22-0982, People of the State of Illinois v. Jotarius Yankaway. Would counsel for the appellant please state your name for the record? Anthony J. Santella. Thank you, Mr. Santella. Counsel for the appellee, could you please state your name for the record? Diane L. Campbell. Thank you, Ms. Campbell. Mr. Santella, you may proceed. Thank you, Your Honor. Good morning, Your Honors, and may it please the court. My name is Anthony J. Santella, and I represent Jotarius Yankaway in today's case. We raise three issues in this case. Second, a one-act-one crime violation. And third, the necessity of a new sentencing hearing. As a brief roadmap, I intend to spend the majority of my time on the ineffective assistance of counsel issue. And in contrast to the briefs, we'll start by addressing deficient performance and prejudice. To start, defense counsel performed efficiently in this case by not affirmatively requesting a speedy trial at several hearings on motions to continue, and by not filing a speedy trial demand compliant with interstate detainer statute. To be clear, Mr. Yankaway made it known repeatedly in his pretrial proceedings that he wanted a speedy trial. Defense counsel knew this, and defense counsel knew that Mr. Yankaway was in dock. Therefore, in order to get Mr. Yankaway's speedy trial clock running on October 1, 2021, which was the date the Illinois Supreme Court lifted the general tolling of speedy trial clocks, defense counsel needed to affirmatively state that Mr. Yankaway wanted a speedy trial and do so by filing a demand compliant with interstate detainer statute. And the reason counsel did not do this was due to a mistake of law. Defense counsel believed that the 120-day speedy trial term began to run automatically. That's shown through defense counsel's filings, his pre- and post-trial motions, including the motion to dismiss for a speedy trial violation, and defense counsel's statements on the record, where he stated his belief that only a 120-day applied and it began to run automatically. Didn't the state and the trial court also think that it was 120 days rather than 160? Yes, they did, your honor. At the June 30th hearing, the prosecutor indicated that there was a 120-day term and had the same mistaken belief as defense counsel that the 120-day term applied. For ineffective assistance purposes and for purposes of this argument, Mr. Yankaway was still in dock. Therefore, defense counsel still needed to file the motion or the demand pursuant to interstate detainers. But the fact that the state also thought this was a 120-day term will go to prejudice, which I'll address shortly, which is just that the state did not take an action to prevent the trial going beyond the 120 days. Even though that was incorrect, the state didn't realize that at the time and allowed the trial to go forward on that mistaken belief. But just to conclude on deficient performance, I do think that this was a mistake of law. Defense counsel was not engaging in any trial strategy here to get extra time. Defense counsel was trying to preserve Mr. Yankaway's speedy trial rights. In order to do so, he needed to do specific things that this court has already said in Jackson and Willis by not filing that demand under interstate detainers. That is deficient performance. And there's no reason for this court to depart from that finding related to deficient performance. Well, counsel, didn't Jackson and Willis also tell us that we can't presume the state would not have prosecuted the defendant within a required time? We simply don't know what would have happened had defense counsel filed a proper interstate detainer motion and find in those cases that yes, it was deficient performance. But since we can't speculate on what would have happened had they done so, we can't establish prejudice. Well, Your Honor, I will turn to prejudice now. And I do know that Jackson and Willis cases for those specific circumstances say that. However, I think in this case, that presumption is undermined by the state's own action in allowing the trial to go forward beyond the 120-day term that it incorrectly believed applied. But I also think that in an ineffective assistance claim, the is there a reasonable probability that the outcome would have been different had defense counsel not performed efficiently? And I think if we are talking about a reasonable probability, there always is going to be some minor sort of speculation when you're coming to an outcome, even for a meritorious claim. And I think the recent third district case, People v. Mooney, discusses this in a way that this court should agree with, which is that when you have an ineffective assistance claim related to these speedy trial rights, there might be some speculation. But look to the record, look to the context. This wasn't a case, for example, where the trial was held on day 165 or 166. The defense admits this trial was held on day 393. That's more than twice the 160-day term. And I also think, in contrast to Jackson-Willis, where the state had caught the mistake and knew that the speedy trial term wasn't running and took advantage of that, I think it is plausible to say the state in Jackson-Willis absolutely could have had the trial before day 160. But when you look at the record in this case, the party that's moving for continuances is the state, not the defense. The state is the party that is saying, well, we don't have witnesses that are available, we need a buckle swab. They're the party that's coming forward and filing motions and pushing this trial date down. And so I think it's inconsistent for the state to say to the trial court, well, we can't have the trial this day, we need to move for a continuance, but then say on appeal that they could have had the trial within 160 days. The defense admits the state wasn't able to have the trial within more than twice 160 days. And I think looking at the context of these things, and including the fact that when the state thought it was a 120-day term, they let the trial go forward even thinking that was a demand and not performed efficiently, there is a reasonable probability the outcome would have been different. I'd like to turn to the continuances at issue. There are four continuances or hearings on these continuances that the defense believes are important here, and I would like to break those down into two groups. The first group are the August 19, 2021 hearing and the June 30, 2022 hearing. These are the hearings where the state moved to continue the trial and the defense objected. The defense admits on appeal here that these are, these were not told, these are simply 70, or excuse me, this would be 115 days that are not attributable to Mr. Yankaway. And I think that those easily are not attributable to Mr. Yankaway, the first group can just be moved on from. The second group are the November 15th date and the February 24th date. These are the dates that the trial court determined or decided to continue the trial on its own, and the defense admits that defense counsel merely accepted the trial. When should demands under the interstate detainer have been filed? I believe that the interstate detainer should have been filed on the August 19th date. That's specifically due to the fact that the court, the Illinois Supreme Court order lifting the speedy trial tolling on October 1st was issued, I believe, it was issued in June of 2021 or maybe early July. So there was advanced notice that this was coming, that the speedy trial clock was going to start running again on October 1st, and defense counsel should have filed the interstate detainer demand on the August 19th, 2021 date. And we did submit in our brief that it was deficient performance not to do that. Okay. So on that date, on that day, he had no speedy trial, right? Well, I think on that date, what's shown by defense counsel's statements on the record is that he just believed that the speedy trial right began to run automatic. Well, and that's fine. Let's assume for a minute that we that we acknowledge deficient performance. On August 19, 2021, he had no speedy trial, right? Correct. He was in custody, he was in custody and had a pending case and had not filed, complied with the interstate detainer. So there is no speedy trial running at that time, correct? Yes, and that's that's why there's no calculations to be calculating from at that point in time, are there? Well, I think based on Cordell, what it says is that, you know, to make this determination, you do look to see if there was a speedy trial, or if that violation would have occurred. And so I just trial demand up to that point. I know, based on the what is in the record, there was mention of speedy trial as early as October 5, 2020, which still was not pursuant to interstate detainers, because we don't have a demand pursuant to interstate detainers, that is correct. But it is shown in the record that the parties here knew that, you know, Mr. Yankway wanted the speedy trial, and we're all operating under that assumption. Right. And the court mentioned at least on one occasion, well, but he's he's currently in custody. So time's not running. That's incorrect, Your Honor. The court didn't say that the court does acknowledge Mr. Yankway was in custody. The record shows that the trial court believed that there just wasn't a speedy trial rate, because there wasn't a remedy if Mr. Yankway wasn't ducked. What exactly did the court say? The court said, and I'm specifically going to refer here to this was after the June 30 trial date, or the continuance for that matter, when the court says, well, there could be a 120 day violation, we're going to set a date in August, and I'll see if there's a violation here. At that date, the court tells Mr. Yankway, I understand that there is a claim of speedy trial violation, but I don't think you have a speedy trial rate. Because there's no remedy, there's nothing that can be done because you're already in dock. That was my reading of what the court, the court's thought process was here. The court doesn't say that the speedy trial term has never been running because of interstate detainees. I don't, I agree. I don't think he uses those terms. But I think he makes the specific reference to the fact that defendant is currently in custody. Yes. Okay, so he's not, he's not going to be released, or he's not subject to being released at this point anyway. That's true. However, had defense counsel filed the correct speedy trial demand, which gets us back to Jackson and Willis. Had he done that, then that would have notified everybody. And then now we have to speculate that, well, the state was just going to continue to sit back and do nothing, and that the continuances were going to continue. That's part of the problem with the analysis that you make, is that if you kick out the first part, then what you say sounds good. But you forget the premise, which is, had the deficient performance not occurred, had he actually made his interstate detainer demand, then we have to speculate as to all these other continuances and, you know, who they would have applied to and who they're responsible, who's responsible for the delay. We really don't need to do that if we realize that we're not supposed to be speculating on what would have happened had defense counsel made his demand for interstate detainer. Respectfully, your honor, I disagree with that. And the reason is that the state did think that the speedy trial clock was running and took actions based on that. That's not the issue. That's not the issue. What the state's doing isn't the issue at this point. The question is, did he comply with the requirements of the interstate detainer? No. Was his performance deficient? Yes. Can we speculate on what the prejudice would have been? No. Well, again, your honor, I would simply say that I think based on the fact of how long this trial was held out, this is a pretty unique case where if we're going on the number of continuances for sake of argument, it is more than twice 160 day term. I think this court can and should find that that there was prejudice and that is the defense's position. So we should do that just based on the number of days, period, regardless of the service. I don't think it's just based on the number of days. I think that it is based on the fact that, you know, the state is the party moving for the continuances here. There's no indication that defense counsel was trying to stretch along the trial for purposes of trial strategy. This was something where the defense was continually put in a position where either the state or the court were moving or pushing the trial date along. And I think that this court can and should consider that the state did on its mistaken belief, allow the trial to be set beyond 120 day term. I think that is, you know, goes to the unique facts of this case. And it's not merely speculation. It shows that in the record, there are concrete things here that show that there was a reasonable probability of a different outcome, but for defense counsel's deficient performance. Thank you, counsel. Go ahead. Well, I would just like to wrap up on the ineffective assistance issue by noting the submits that the February 24 hearing should not be attributed to Mr. Yankaway, because defense counsel was merely accepting the court's decision to continue that trial date. And I think as to and regarding the February date here, if this court accepted offenses argument, really only the February date where defense counsel should have objected, plus one of the other two excuse me, June 30, or August 19, get over 160. So even if this court disagrees on November 15, which I will discuss in a second, defense only really needs the February date and one of the other two. But as the November 15 date, this was the date that defense counsel believed was on defense's motion. And the defense here on appeal submits that this is again, similar to the people Mooney case, where in that defense counsel agreed for this to be on his motion, but did so without discernible trial strategy reason, and that it should be found to be part of his deficient performance without a discernible trial strategy position. He has three trials scheduled the same day. I think it's unclear from the record of the three trials were set, we know at least one trial was set. And they were discussing whether or not those trials were even going to go forward. I think it's notable, Your Honor, that it's not defense counsel who is discussing or saying to the court that he's unable to do these trials. And it's not totally clear if those other two defendants in unrelated cases, we're going to absolutely proceed to trial in court offer to is your honor referring to moving it up to moving the defendants trial up in the court offer to move the defendants trial up to avoid the squeezing in with three trials in a short period of time. No, Your Honor, that that is incorrect. I think at the November 15 hearing, the court basically says there's three trials, or three cases, three defendants, they're all set for this short period of time, I think it's best to continue the case. The court is the one that says, well, it could be January or February. And then I believe what Your Honor is referring to is, is the court says, well, we could also do it in December. And it's at that point where defense counsel says, well, you know, December is busier for me. So January and February would be better. Right? I think the point here is that the court already said, it could be January or February, that that, I think what Your Honor is referring to is not based on the other cases. When you're looking at discerning, you started out looking at discernible defense trial strategy. And when he's offered December and says, well, you know what, I I'm even busier in December. That sounds to me like discernible defense trial strategy. I have too many cases going on at the same time, I cannot give adequate attention to the defendant's case at this time. And I'm not prepared to do so. Well, Your Honor, it could have been more clear. And I do think that one thing I would say in response is I do mean that defense counsel, either at this date or any of the other dates, is not saying anything to the effect of I need time to get witnesses or extra evidence or things like that. And I do think that to me is actually what what makes the point that I think is most significant here. You draw these conclusions based on a cold transcript, as opposed to what's actually happening in that courtroom at that time, in the mind of the defendant. And because he doesn't articulate it, even though if you look at this, the scenario, from from having been in that situation many times, okay, ourselves, it is any judges likely to have been, you can clearly understand why a defense attorney, when confronted with the opportunity to well, let's move it up, has to make the tactical decision, I just can't do that at this point in time. And that's reasonable under the circumstances and is not to the detriment of his client, but in order to make sure that he is adequately prepared and has adequate time to present his defendant's case. Your Honor, my response is simply that, you know, when it's I think even when you compare it to what happened in November 15, where the court is saying, well, there's three cases, defense counsel, you know, isn't saying that that's a problem at that point. And he doesn't say it's a problem at the August 19 hearing, when he you know, he's saying, well, my client was planning on going to trial. And I think based on the context of his statements, my reading is, is that defense counsel is saying, well, December had already been set, and they were planning for trial in November. And, and again, the defense admits that it was the trial court who moved the date there and defense counsel merely accepted, and it was deficient performance for him to do so. And thank you, Mr. Santella, I apologize, your time is up, but you will have further opportunity on rebuttal. Thank you, Your Honor. Thank you. Ms. Campbell. I'll address first the November 15 proceeding. And I do have it, in large part written out in my brief on pages 17 and 18. To hit some of the highlights. The judge says, we're picking back up on the speedy trial counts, and I guess we could cram the trial into December. He repeats again, I could worm it into December date, but that would be very tough. Obviously, the trial court is willing to put it in to the December call, if that is what the defendant wants. The defense counsel says, my preference, my December calendar is pretty crowded. We can't even begin getting ready for trial. So it would probably be better in January or February. This is clearly at defense counsel's convenience so that he can prepare for trial, because he's not ready for trial on November 15, because he has three cases set. The court at that point offered to put it in the bubble for tomorrow, if defense counsel manages to miraculously resolve the other two cases. So clearly, the trial court is willing to have a trial for defendant if defense counsel can represent him. Again, this is private counsel. He doesn't have backup where, you know, if he's a PD, perhaps somebody else could do the case. And in People v. Carr, the court notes that it's a strategic choice for counsel, and it is not ineffective assistance to be prepared for trial. In that case, the court also noticed that the defendant did not fire his attorney. The same occurs here. Despite the November delay and then setting further dates, at no point did defendant ever actually fire his trial counsel. This is the same trial counsel who represented him at the actual trial in September, and then again in the post-trial in sentencing. So I think that's a big factor for obviously, you know, had the defendant asserted his speedy trial right at that November proceeding, the trial would have occurred in December. So that takes any speculation about compliance with a speedy trial term had one ever actually been in effect. And I think your count your honors keyed in on that. The other instance of a lack of prejudice comes in the June hearing. And at that point, and I'd like to contrast defense counsel's statement at the February 24th hearing, which the court attributed to the defense and his statements June 30th. At June 30th, counsel says, I respectfully object to the continuance on behalf of my client, because he wants his speedy trial rights. So that was a ineffective demand for speedy trial, because it didn't comply with interstate detainers. But nonetheless, and I think at that point, trial counsel perhaps did file an ineffective speedy trial claim. But again, that wouldn't retroactively affect anything that occurred before that point. But anyways, at that point, the trial court, they're discussing the trial date, and the trial court asked if there's a speedy trial running. Morris says that applies. The ASA mistakenly says 53 days of the 120 day calendar, he later corrects it to 46 days at a subsequent date. So they are thinking along those lines of a speedy trial potential problem. However, the court says, when they're questioning, you know, whether it is outside the 120, the state's attorney says, so it would have to be set sooner than that, your honor. And the trial court at that point specifically says, I'm going to set this for an August 10th hearing, I'll bring you back on August 10th to review the case so that he can have his trial within 120 days if needed. So again, the court who is in control of scheduling has indicated it is more than willing to comply with any speedy trial term that might apply. Again, that goes to a total lack of defendant's ability to prove any prejudice. Clearly, the court was aiming to comply with speedy trial. I also disagree that the defendant constantly wanted speedy trial. His 2020 speedy trial demand is a nullity, it's void, it's before anything in this case ever started. And the defendant throughout the case has not displayed a adamant desire for a speedy trial. If you look at his actual trial on the other charges on September 28th, they have the jury waiting down the hall ready to go for a 1.30 start selection. They are talking in the morning about scheduling, defense counsel says he is ready to go on that trial, but the defendant personally wants a continuance. The trial court denies that, he finds that it is just for purposes of delay. They are talking about potential negotiations. The trial court says, we're coming back at 1.30 for the jury trial, I won't accept a plea after the noon hour. They come back later and the judge is saying, I'm very close to a partial plea. Defense counsel interrupts and says, defendant has changed his mind, he'll take the seven years. So they come up with a partial or fully negotiated guilty plea. But again, it was the defendant at that point himself who was personally attempting to delay. Again, I emphasize that. Ms. Campbell, I hate to interrupt you, but I haven't heard one word yet about the one act, crime issue. I'd like for you to explain to me why people v. Crespo does not control in this case. In Crespo, the court considered why the state or how the state argued the case to the jury. In this case, the jury received the accountability instruction. The state always argued accountability. The evidence fully supported the accountability. As a sideline, Flynn says that the add-on applies to the defendant under accountability. But in this case, for the one act, one crime itself, there are two shooters. There are two actions. That is always the state's argument. That is fully supported by all of the evidence in the case. For example, Mr. Hunter, the victim, said that he saw the defendant and co-defendant Robinson shooting at him. Okay, I get that. But in the reply brief, the defendant cited people v. Beltran. Did you take a look at that case? I did, your honor. That's right on point. I disagree. It says Crespo does control. In that case, there were two witnesses who directly identified the defendant as the shooter. That was against each victim. The state didn't distinguish. But in that case, it was the defendant who committed the single act of shooting. Here, we have accountability. We have two people shooting. We have two actions. This is vastly different from that. Again, Crespo says, you look at how the state presented and argued the case to the jury. Clearly here, they were arguing under accountability. Both defendants' actions. Your honor, you seem to be suggesting that a person can be convicted as an accomplice and as the principal. There's no case law to support that, is there? In this case, I believe you can because the- In essence, accountability provides an alternative basis of liability, not an additional basis for liability. Once a defendant's guilt as a principal has been established through his own conduct, there is no longer any need to base a conviction for the same crime on the doctrine of accountability. We do not believe that intended to convict a defendant as a principal and an accomplice. Doesn't that defeat your argument here? I don't believe it does because we have two separate actions. We have defendant shooting and we have his accomplice co-defendant shooting. They are each shooting separate guns. They are separate actions of shooting. Under your theory, he could be convicted of attempt murder twice, two convictions, two sentences. Right? That was not the way it was argued. The court is- That's exactly how it was argued. It said his guilt or for anybody he's responsible for. That was the argument. That is one conviction for one offense. They are not asking for multiple convictions on the attempt first degree murder. I know they're not. Under your theory, they could have. Again, under CRESPO, it is how the state is arguing and presenting it to the jury. They are not asking for multiple convictions on attempt first degree murder. The jury only gets one verdict on that. They are asking for and give one verdict for the aggravated battery. Again, I'm going to read it to you. CRESPO controls. Here, defendant and another person fired a series of shots at three victims. Against each victim, was charged with and convicted of a count of attempt and a count of aggravated discharge of a weapon. However, as to each victim, the indictment did not specify which shots supported which charge. Same here. Similarly, back to the quote, at trial, the state did not distinguish among the shots. Thus, against each victim, defendant committed a single act that supported only a single conviction. Therefore, three convictions, I'm not quoting now, for attempt stood, but the three convictions for aggravated discharge of firearms were vacated. I don't see how that doesn't apply here. Again, what is of note there is that there were convictions for firearm. The single act was the shooting by the person for the attempt. What was the act of the attempt murder in this case? It was. The discharge of the fire. That was not an element of the offense. That was specifically a sentencing element. And so, I think that is a difference. Certainly, it can be either defendant or co-defendant. And again, the other charge here is the aggravated battery. And that requires bodily harm. So, with the attempt first degree murder, you have to prove an intent to kill. You can miss the victim entirely if you're a bad shot and still be guilty of the intent to kill. With the aggravated battery, you are required to show bodily harm. And so, those are entirely different offenses. They're not in any way lesser included offenses. We're not talking about lesser included here. I'm talking about the act. Oh, right. Lesser included under the abstract elements test. I'm talking about the act. What is the act? Okay. If you look at People v. Wilson, which I cite in my brief, you have two convictions for two offenses are proper if the act is common to both is either part of each offense or only the only act necessary for one offense. In that case, the act of shooting was common to both, but the armed robbery with a firearm required taking cash. There wasn't a separate attempt first degree. There was a taking out of the robbery, which was an additional element. Right. That doesn't help. I think it does because the Mr. Hunter entirely and still be guilty of attempt first degree murder, but in order to prove the aggravated battery, you have to prove the bodily harm. I think that's the major distinction, and I think that puts Willis actually squarely on point with this case. And again, it is all demonstrated by the actual evidence because you have the Mr. Hunter testifying that he saw both Robinson and defendant shooting at him. In fact, he saw muzzle flashes from the defendant's gun at the scene. There are five shells found. Two of them are traced to the Glock. The Glock is the defendant's firearm because he's discovered a week and a half later in a unrelated traffic stop. He's the driver of the car. The gun's found under the driver's seat. His fingerprints are on that gun. So again, we have overwhelming proof that it was not only the that have to be proven, which is the intent to kill for the first for the attempt first degree murder. We have the bodily harm, which is the requirement, which is different, I think, than in the Belton case, because you do have to prove that bodily harm. So it can't be in any way considered a lesser included offense. Do you have any? And again, I think Crespo goes along with this because that is exactly how the state argued, presented the case and argued it to the jury. They included the accountability instruction. They argued that there were two separate actors doing two separate actions, which is each was shooting. The defendant is accountable for not only his actions in shooting, but he is accountable for Mr. Robinson's actions in shooting. Ms. Campbell, the state also indicated at the outset that if found guilty of the attempt murder, they were only seeking the 15 year enhancement for possession. That was a statement by the trial court pretrial. This is not a plea bargain situation where it is bound by some sort of agreement to only do that. Certainly, the state's comment is not in any way binding on the trial court. And again, at the sentencing hearing, no one argues the defendant is arguing this under plain air. I argue there is not a plain and clear air. Everyone is agreeing that the 20 year is applicable and the 20 year applies to an add on for personally discharging the firearm. That was more than fully proven up at the trial, both by the victim's testimony that he saw the defendant firing at him and saw the muzzle flash, and by the fact that some of the shell casings at the scene were traced to the defendant's Glock that he was shooting. Perhaps my question wasn't worded very well. My point was that was further evidence that the state acknowledged at the very outset that they were considering two different possibilities for each of these offenses. Possibility that the defendant actually discharges the firearm and is guilty of it. The possibility that he is simply in possession of the firearm and that he wasn't the one who is directly responsible. And then secondly, the aggravated battery, which was, as you've said, is a completely separate offense. I see my time is up. Can I... Again, this is CRESPO. This is how the state actually argued it and presented it to the jury. They gave the accountability. They argued separate actions. So, you know, again, their theory at the beginning, you know, can be modified. And then their actual argument to the jury was always clearly accountability for his own actions as well as his co-defendant's actions. So again, we've got separate. The add-on applies under accountability under Flynn. So I don't see a one act, one crime or a firearm add-on problem. All right. Thank you, Ms. Campbell. Mr. Santella, rebuttal. Thank you, Your Honor. I'd like to start by just briefly addressing the one act, one crime issue. The state never apportioned this conduct at trial. And here on appeal, opposing counsel is saying that there are things such as, you know, the accountability applies to show this two acts, but at the trial... Did you try and object to the accountability instruction? To be honest with you, Your Honor, I don't know. However, I think that one of the things that this court should note is that in the closing argument, what the state told the jury is that Mr. Yankaway and I believe the other co-defendant was Jafari Robinson, they performed the same act. And here, I don't think it can be said that the state, you know, apportioned... That's our question is, was accountability an issue from the outset? I think based on what the state was presenting at trial, that they here just simply didn't apportion this conduct in separate counts. That's the defense's position. And I think that this is a more straightforward application of CRESPO and that, you know, each injury here to the complaining witness was not apportioned before trial. And I do think this court should make it... Okay, so you say that CRESPO requires the state to differentiate or apportion the charge defenses in the charging instrument? I think that CRESPO says that if the injuries were not apportioned at the trial level, then it can't be done so on appeal. And it's our position, the state's now trying to do so on appeal. Okay, that's different. The question is, as I took your argument in your brief, they didn't apportion or differentiate the charges in the charging instrument. And that that's what you were saying CRESPO says. Well, I believe, Your Honor, my argument relates to just that the state was not apportioning it at the trial level and in the indictments, yes. Okay. But I'm sorry, go ahead. So CRESPO... Your Honor, my argument is that CRESPO says that if the injuries are not apportioned at the trial level, they should be apportioned on appeal. And that is my response. Okay. Anyway, go ahead. I'm using up your time. I apologize. I do think that, you know, not to repeat myself, but I do think that is the case here as far as one act of crime is concerned. And we would ask this court to vacate the conviction and sentence and count two as a lesser offense. But just to briefly reply to the state's response to the speedy trial argument, I would like to note for the court that the defendant here, Mr. Yankoe, did repeatedly ask for a speedy trial in the record. And that is shown in his, you know, his pro se filing state says that it shouldn't be counted or doesn't have a legal effect. But I think that can go to show this court that Mr. Yankoe did want a speedy trial and did let it be known. And that pro se filing was before he was charged in the separate unrelated case, which was, I believe, captioned 20 CF 238. And then in the October 5th, 2020 order, again, it says that Mr. Yankoe is to be returned for speedy trial. So I think here at all stages, it was known Mr. Yankoe wanted a speedy trial. And for the reasons that I've argued in this argument, and in the briefs, we believe that this court should find there was ineffective assistance of counsel and not making an appropriate speedy trial demand and reverse Mr. Yankoe's convictions outright. And the alternative, this court should vacate Mr. Yankoe's conviction sentencing count to as a violation of the one act one crime rule. And if your honors have any additional questions, I do also think I would stand on the briefs as to argument three. I have one more question. What happened to the law for use of weapons? chart doesn't appear that the trial court did anything with that, even though it was found guilty. Yes, your honor in the record, I don't have the exact page citation in front of me. But in the record, the prosecutors says to the court that they don't need to enter a sentence on count three just judgment. And that's what the court does. It just never issues a sentence. I think to the effect that a new sentencing hearing is required under count three, it could be considered an almost invited error by the state to to say that no sentence needs to be entered for count three, and that a new sentence, new sentencing hearing would be required. Again, alternative to our first argument on the attempt to charge. All right. Thank you, counsel. We appreciate your arguments. Thank you for putting up with our questions. The court will take this matter under advisement and the court stands in recess.